IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SCOTT HOWARD HOLT, an individual, and THE ESTATE OF JACKIE MARIE EVANS HOLT,<br><br>      Plaintiffs,<br>v.<br><br>CMFG LIFE INSRANCE COMPANY aka CUNA MUTUAL GROUP, and JOHN DOES I-V,<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:19-cv-244-RJS-DBP<br><br>Chief Judge Robert J. Shelby<br><br>Chief Magistrate Judge Dustin B. Pead |

      This action concerns whether proceeds are payable under an accidental death insurance policy. In November 2016, Jackie Holt suffered a dog bite. One week later, she was admitted to the hospital after developing a heart infection (endocarditis) from the bite. Two weeks later, she died suddenly of cardiac arrest caused by the endocarditis. The accidental death insurance policy took effect after Holt developed the endocarditis, but shortly before she died. On that basis, Defendant CMFG denied payment of the policy proceeds. Plaintiffs Scott Holt[1] and The Estate of Jackie Marie Evans Holt (collectively, Holt) brought suit, arguing CMFG's denial was wrongful.

      Now before the court is CMFG's Motion for Summary Judgment,[2] in which CMFG asserts the accidental death insurance policy does not cover Jackie Holt's death. For the reasons explained below, CMFG's Motion is GRANTED.

---

[1] Scott Holt is Jackie Holt's widower.

[2] Dkt. 20.

1

## BACKGROUND[3]

On November 5, 2016, Jackie Holt applied for accidental death and dismemberment coverage from CMFG in the amount of $200,000 (the Policy).[4] The Policy took effect on December 1, 2016, at 12:01 A.M.[5]

The Policy provides benefits "to covered persons for accidental death and accidental dismemberment."[6] The Policy defines "accidental death" as "death resulting from an injury, and occurring within 1 year of the date of the accident causing the injury."[7] The Policy defines "injury"" as "bodily damage or harm which: (a) is caused directly by an accident and independently of all other causes and (b) occurs while a covered person's insurance is in force under your certificate."[8] The Policy excludes coverage "for any loss or covered injury that: . . . j.) is due to any disease, sickness, bodily or mental illness, or complication resulting from medical treatment, surgery, pregnancy or childbirth."[9]

On or before November 10, 2016, a dog bit Jackie Holt's right hand and foot.[10] She soon contracted a heart infection, endocarditis, from the dog bite. She was admitted to the hospital on November 21, 2016,[11] where she remained for ongoing treatment of the endocarditis.[12] Jackie unexpectedly suffered cardiac arrest and died on December 1, 2016, at 12:40 P.M., the same day

---

[3] Both sides agree there is no genuine dispute as to any material fact. Dkt. 20 at 2; Dkt. 27 at 1.

[4] Dkt. 20 ¶ 6.

[5] *Id.*

[6] *Id.* ¶ 7 (quoting Defs.' Ex. 3 at 4).

[7] *Id.* ¶ 8 (quoting Defs.' Ex. 3 at 3).

[8] *Id.* ¶ 9 (quoting Defs.' Ex. 3 at 3).

[9] *Id.* ¶ 10 (quoting Defs.' Ex. 3 at 6).

[10] *Id.* ¶ 1.

[11] *Id.* ¶ 2.

[12] *Id.* ¶ 4.

the Policy went into effect.[13] Her cardiac arrest was "due to, or as a consequence of," the endocarditis that began two weeks earlier.[14]

In December 2016, Scott Holt, the Policy's beneficiary, submitted a claim to CMFG for the Policy proceeds.[15] CMFG denied the claim on the grounds that the injury causing Jackie Holt's death was the endocarditis she contracted before the Policy was in effect.[16] Scott Holt then filed suit, alleging CMFG breached both the written terms of the Insurance Policy contract and the implied covenant of good faith and fair dealing by wrongfully denying his claim.[17] CMFG now moves for summary judgement.[18]

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party is "entitled to judgment as matter of law."[19] A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[20] Under this standard, the court will "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."[21]

---

[13] Dkt. 20 at 2; Dkt. 27 at 8.

[14] Dkt. 20 ¶ 12 (quoting Defs.' Ex. 4 at 2).

[15] *Id.* ¶ 13.

[16] *Id.* ¶ 14.

[17] Dkt. 2, Ex. A at 5, 9–10.

[18] Dkt. 20.

[19] Fed. R. Civ. P. 56(a).

[20] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[21] *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000) (citation omitted).

# ANALYSIS

Holt brings two causes of action. The first is a breach of contract claim arising out of CMFG's refusal to pay Holt the insurance proceeds under the Policy. The second relates to the implied covenant of good faith and fair dealing. The court considers Holt's two causes of action in turn.

## I. Breach of Contract (Count I)

Holt asserts CMFG breached the Policy's terms by wrongfully denying his claim.[22] Specifically, Holt argues Jackie Holt's cardiac arrest was an "injury" covered under the Policy because the cardiac arrest constitutes "bodily damage or harm which (a) was caused directly by an accident (dog bite/resulting infection) and independently of all other causes; and (b) occurred on December 1, 2016 while Jackie Holt's Insurance policy was in force under her certificate."[23] Accordingly, Holt insists CMFG should have paid the Policy proceeds.[24] Before considering the substance of Holt's argument, however, the court addresses his contention the Policy must be construed strictly against CMFG in favor of coverage.[25]

### A. The Policy Need Not Be Strictly Construed Against CMFG

Holt asserts the Policy must be construed strictly against CMFG in favor of coverage because "insurance contracts are typically drafted by insurance company attorneys" and the terms are "not negotiated by the insurer and the insured."[26] Holt argues that "to the extent that there may be two reasonable interpretations, or an interpretation which reasonably may have

---

[22] Dkt. 2, Ex. A at 5, 9–10.

[23] *Id.* 8–9.

[24] *Id.* at 9.

[25] Dkt. 27 at 6–7.

[26] *Id.* at 6.

been understood by Jackie M. Holt, this Court should apply such interpretation to afford the broadest amount of coverage for Plaintiffs in this action."[27] The court disagrees.

Under Utah law, "[a]n insurance policy is merely a contract between the insured and the insurer."[28] Accordingly, Utah courts interpret insurance policies as they do contracts.[29] "The underlying purpose in construing or interpreting a contract is to ascertain the intentions of the parties to the contract."[30] "[I]f the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[31] If an ambiguity exists, however, then any doubts are resolved against the insurer.[32] "Whether an ambiguity exists in a contract is a question of law."[33]

"An insurance policy is ambiguous 'if it is unclear, omits terms, or is capable of two or more plausible meanings.'"[34] The "policy terms are not necessarily ambiguous simply because one party seeks to endow them with a different interpretation according to his or her own interests. Rather, 'the proposed interpretation must be plausible and reasonable in light of the language used.'" [35] When the policy contains ambiguous or uncertain language "that is fairly

---

[27] *Id*. at 7.

[28] *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993). The parties agree Utah law governs this action. *See* Dkt. 20 at 5; Dkt. 27 at 6.

[29] *Benjamin v. Amica Mut. Ins. Co.*, 2006 UT 37, ¶ 14, 140 P.3d 1210.

[30] *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 17, 54 P.3d 1139.

[31] *Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 21, 133 P.3d 428 (citation omitted).

[32] *Alf*, 850 P.2d at 1274.

[33] *Id.*

[34] *Allegis Inv. Servs., LLC v. Arthur J. Gallagher & Co.*, 371 F. Supp. 3d 983, 994 (D. Utah 2019) (quoting *S.W. Energy Corp. v. Cont'l Ins. Co.*, 974 P.2d 1239, 1242 (Utah 1999)).

[35] *Id.*

been understood by Jackie M. Holt, this Court should apply such interpretation to afford the broadest amount of coverage for Plaintiffs in this action."[27] The court disagrees.

Under Utah law, "[a]n insurance policy is merely a contract between the insured and the insurer."[28] Accordingly, Utah courts interpret insurance policies as they do contracts.[29] "The underlying purpose in construing or interpreting a contract is to ascertain the intentions of the parties to the contract."[30] "[I]f the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[31] If an ambiguity exists, however, then any doubts are resolved against the insurer.[32] "Whether an ambiguity exists in a contract is a question of law."[33]

"An insurance policy is ambiguous 'if it is unclear, omits terms, or is capable of two or more plausible meanings.'"[34] The "policy terms are not necessarily ambiguous simply because one party seeks to endow them with a different interpretation according to his or her own interests. Rather, 'the proposed interpretation must be plausible and reasonable in light of the language used.'" [35] When the policy contains ambiguous or uncertain language "that is fairly

---

[27] *Id*. at 7.

[28] *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993). The parties agree Utah law governs this action. *See* Dkt. 20 at 5; Dkt. 27 at 6.

[29] *Benjamin v. Amica Mut. Ins. Co.*, 2006 UT 37, ¶ 14, 140 P.3d 1210.

[30] *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 17, 54 P.3d 1139.

[31] *Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 21, 133 P.3d 428 (citation omitted).

[32] *Alf*, 850 P.2d at 1274.

[33] *Id.*

[34] *Allegis Inv. Servs., LLC v. Arthur J. Gallagher & Co.*, 371 F. Supp. 3d 983, 994 (D. Utah 2019) (quoting *S.W. Energy Corp. v. Cont'l Ins. Co.*, 974 P.2d 1239, 1242 (Utah 1999)).

[35] *Id.*

susceptible to different interpretations," the provision "should be construed in favor of coverage."[36] However, if the policy is not ambiguous, "no presumption in favor of coverage arises; rather, the policy language is construed pursuant to its ordinary meaning."[37]

For the reasons discussed below, the court concludes the Policy language is unambiguous. Accordingly, the court need not construe the Policy strictly against CMFG.

### B. The Policy Does Not Cover Jackie Holt's Death

The Policy states that "[w]hile this certificate is in effect, benefits are provided to covered persons for accidental death and accidental dismemberment."[38] The Policy defines "accidental death" as "death resulting from an injury, and occurring within 1 year of the date of the accident causing the injury."[39] The Policy defines "injury" as "bodily damage or harm which: (a) is caused *directly* by an accident and *independently* of all other causes and (b) occurs while a covered person's insurance is in force under your certificate."[40]

CMFG asserts Jackie Holt's death resulted from endocarditis, an "injury" that occurred two weeks before the Policy was in force, and therefore coverage is not available under the plain terms of the Policy.[41] CMFG argues the endocarditis—not the cardiac arrest—was the "injury" that caused Jackie's death because the cardiac arrest occurred only "due to or as a consequence

---

[36] *Fire Ins. Exch. v. Oltmanns*, 2012 UT App 230, ¶ 6, 285 P.3d 802 (internal quotation marks and citations omitted).

[37] *S.W. Energy Corp.,* 974 P.2d at 1242.

[38] Dkt. 20, Defs.' Ex. 3 at 4.

[39] *Id*. at 3.

[40] *Id*. (emphasis altered).

[41] Dkt. 20 at 5.

6

of" the endocarditis.[42] CMFG contends the cardiac arrest was not an "injury" independent of the endocarditis, but rather stemmed directly from the endocarditis.[43] The court agrees.

The Policy imposes clear and unambiguous conditions that are not reasonably susceptible to more than one meaning. To be covered, an accidental death must result from an "injury" that is "directly" caused by the accident, "*independent* of all other causes," while the Policy is in force.[44] The plain meaning of "directly" is "from the source without interruption or diversion," "marked by [the] absence of an intervening agency, instrumentality, or influence," and "stemming immediately from a source."[45] Under the Policy's plain meaning, the accident—the dog bite—did not directly cause the cardiac arrest because the cardiac arrest did not stem "immediately" from the dog bite, "without interruption or diversion," but rather was dependent on the "intervening influence" of the endocarditis.[46] The dog bite (the accident) directly caused the endocarditis (the injury) Jackie Holt contracted before the Policy was in effect, and the endocarditis caused the cardiac arrest. Thus, under a plain reading of the Policy, Jackie's death was not covered because the "injury" did not occur while the Policy was in force.

Utah caselaw supports this conclusion. The parties discuss at length two cases: *Handley v. Mutual Life Insurance Co. of New York* and *Browning v. Equitable Life Insurance*.[47] In *Handley,* the insured died from a pulmonary embolism "following a surgical operation for the reduction of a hernia . . . caused by an accident . . . when a heavy steel bar which had been

---

[42] *Id*. at 6–7.

[43] *Id*. at 7.

[44] Dkt. 20, Defs.' Ex. 3 at 3 (emphasis added).

[45] *Direct*, Merriam-Webster Online Dictionary (*available at* https://www.merriam-webster.com/dictionary/direct) (last visited August 10, 2020).

[46] *Id.*

[47] Dkt. 20 at 5–6; Dkt. 27 at 9–10.

7

leaning against a shed fell and struck the insured in the left groin."[48] The decedent's life insurance policy stated that the insurance company would pay his wife, the beneficiary, "[t]wo [t]housand [d]ollars upon receipt of due proof that the Insured died as a direct result of bodily injury effected solely through external, violent, and accidental means, independently and exclusively of all other causes, and . . . that such death occurred [] within ninety days after the date of such injury."[49] Although the insured decedent did not die within 90 days of getting hit by the steel bar, the Supreme Court of Utah held that the beneficiary was still entitled to the policy's proceeds because "the violent, external, and accidental injury" that caused the decedent's death was the "surgical operation," and the decedent died within 90 days of the operation.[50] The court further explained that the insured's death was a direct result of the surgical operation (the injury) because "[w]here there is a definite sequence or casual chain from [the] accident causing the injury to the death without independent intervening circumstances . . . the death is a direct result of the injury."[51]

As the *Handley* court ruled the injury causing the death of the insured was the surgical operation and not the pulmonary embolism which resulted from the surgical operation, this court concludes the injury causing Jackie Holt's death was the endocarditis, not the cardiac arrest that resulted from the endocarditis. Further, *Browning* clarified that a deadly complication suffered as a result of an injury is not an injury itself:

---

[48] *Handley v. Mut. Life Ins. Co. of New York*, 147 P.2d 319, 320 (Utah 1944).

[49] *Id*. (internal quotation marks omitted).

[50] *Id*. at 324.

[51] *Id*. at 321.

> [A]ll morbid changes in the exercise of vital functions or the texture of the bodily organs which result from or are induced by [a bodily] injury *should be regarded as the effect thereof, and not as independent causes.* When death results from any such morbid change so resulting from or induced by such injury, the injury, and not the morbid change induced by it, is the cause of death. Beginning with a primary cause, conditions induced by such cause are effects thereof; and every condition so induced must be considered in relation thereto as an effect, and not as a cause.[52]

The cardiac arrest Jackie Holt suffered was "a morbid change in the exercise of vital functions of the bodily organs" which "result[ed] from or was induced by a bodily injury," the endocarditis.[53] This morbid change induced by the endocarditis resulted in her death. Thus, under Utah law, the primary injury—the endocarditis—is the cause of death, and the condition induced by it—the cardiac arrest—was a tragic effect of the primary injury. Because the endocarditis occurred before the Policy was in force, Jackie Holt's death is not covered.

Holt asserts *Handley* and *Browning* are inapposite because "the issue being addressed in [them] was whether an injury was the cause of death—not whether the accident was the cause of an injury."[54] But while Holt argues there is a significant distinction between those two questions, Holt fails to explain what that distinction is or why it is legally material here.[55] Although Holt is correct those cases do not answer the exact question now before the court, both the *Browning* and *Handley* courts recognized that an injury is different from a morbid change caused by that injury.[56] And here, there is a similar distinction between the injury an accident directly causes and later "morbid changes" indirectly caused by an accident.

---

[52] *Browning v. Equitable Life Assur. Soc. of U.S.*, 80 P.2d 348, 351 (Utah 1938) (emphasis added) (citation omitted).

[53] *Id.*

[54] Dkt. 27 at 9.

[55] *See id.*

[56] *See Handley*, 147 P.2d at 320; *Browning*, 80 P.2d at 351.

Still, Holt argues the cardiac arrest was an independent injury directly caused by the dog bite and resulted in Jackie's death because "[b]etween the accident (the dog bite) and the cardiac arrest, there was a definite sequence or causal chain, but not an intervening circumstance to break the connection between the accident and death."[57] The court disagrees. If a "secondary cause . . . is set in motion or in operation by the primary cause, or if its operation is controlled, directed or influenced in its action or behavior, by the primary or first cause, then the second or secondary cause is not an independent cause" but rather a "cause of a cause."[58] Here, the cardiac arrest was not "directly caused by the accident, independent of all other causes," but rather a secondary cause, *indirectly* caused by the accident, dependent upon the primary cause of the endocarditis, which occurred before the Policy went into effect. Thus, Jackie Holt's death is not covered by the Policy, and CMFG is entitled to summary judgment.[59]

## II. Breach of the Implied Covenant of Good Faith (Count II)

"[W]here there is no breach of an express covenant in a contract, there can be no cause of action for breach of an implied covenant arising therefrom."[60] Having concluded CMFG did not breach the insurance contract by denying Holt's claim, the court also grants CMFG summary judgment on Holt's claim for breach of the implied covenant of good faith.

---

[57] Dkt. 27 at 10.

[58] *Browning*, 80 P.2d at 352.

[59] Alternatively, CMFG argues that, even if the court concluded the injury causing death was cardiac arrest, coverage should still be denied under the Policy's provision excluding "any loss or covered injury that: . . . is due to any disease, sickness, bodily or mental illness, or complication resulting from medical treatment, surgery, pregnancy or childbirth." Dkt. 20 at 7–8. Because the court concludes the endocarditis—not the cardiac arrest—was the injury causing death, the court declines to reach CMFG's alternative theory.

[60] *Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1176, 1196 (D. Utah 2015) (quoting *Asael Farr & Sons Co. v. Truck Ins. Exch.*, 2008 UT App 315, ¶ 37, 193 P.3d 650).

## CONCLUSION

For the reasons explained above, CMFG's Motion is GRANTED.[61] The Clerk of Court is directed to close the case.

SO ORDERED this 11th day of August 2020.

BY THE COURT:

_____
ROBERT J. SHELBY
Chief United States District Judge

---

[61] Holt also moves for summary judgment. Dkt. 32. Because Holt's Motion merely incorporates the briefing contained in his Opposition to CMFG's Motion, Holt's Motion is DENIED for the same reasons given above.